# In the United States Court of Federal Claims

Nos. 18-682C and 18-756C
(Filed Under Seal:  September 7, 2018)
(Reissued for Publication:  September 19, 2018)*

```
*****************************************
RX JOINT VENTURE, LLC, and TISTA          *
SCIENCE AND TECHNOLOGY CORP.,             *
                                          *     Postaward Bid Protest; RCFC 52.1; Cross-
              Plaintiffs,                  *     Motions for Judgment on the
                                          *     Administrative Record; Clarification;
v.                                        *     Presumption of Regularity; Safeguarding
                                          *     Procedures; Government Control;
THE UNITED STATES,                        *     Discussions
                                          *
              Defendant.                   *
*****************************************
```

<u>David F. Barton</u>, San Antonio, TX, for RX Joint Venture, LLC.

<u>Ryan S. Spiegel</u>, Bethesda, MD, for TISTA Science and Technology Corporation.

<u>Lauren S. Moore</u>, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

        In separate, but consolidated, postaward bid protests, plaintiffs RX Joint Venture, LLC
("RXJV") and TISTA Science and Technology Corporation ("TISTA") allege that the
contracting officer ("CO") improperly evaluated their respective proposals in connection with a
solicitation issued by the United States General Services Administration ("GSA") for
information technology services.  In their protests, RXJV and TISTA both argue that the CO
erred by selecting awardees without contacting plaintiffs concerning information that they failed
to submit to the GSA.  TISTA also argues that it should prevail on its protest because the GSA
lost the documents that the CO concluded were never submitted.  The court is now presented
with RXJV's and TISTA's separate motions for judgment on the administrative record as well as
defendant's cross-motions for judgment on the administrative record.  For the reasons explained
below, the court (1) grants defendant's cross-motions and (2) denies RXJV's and TISTA's
motions.

---

        * The reissued Opinion and Order incorporates the agreed-to redactions proposed by the
parties on September 18, 2018.  The redactions are indicated with bracketed ellipses ("[. . .]").

# I. BACKGROUND

## A. Solicitation

On June 20, 2016, the GSA issued solicitation QTA0016GBA000 to procure information technology services for the government.  Administrative R. ("AR") 4, 14.  Specifically, the GSA sought proposals for the Alliant 2 Small Business Governmentwide Acquisition Contract, a multiple-award, indefinite-delivery, indefinite-quantity contract.  Id. at 4.  An awardee under the solicitation would then become eligible to receive task orders performed under the contract.  Id. at 262-63.  The GSA specified that proposals were due by October 7, 2016.  Id. at 258.

### 1.  Proposal Format and Contents

The GSA required that offerors submit their proposals on one digital video disc ("DVD").[1]  Id. at 109.  The DVD was to contain separate folders for each volume of the proposal—general; responsibility; cost-price; past performance; relevant experience; organizational risk assessment; and systems, certifications and clearances.  Id.  Within the general folder, offerors were required to include, among other items, a completed copy of the Document Verification and Self Scoring Worksheet ("Scoring Worksheet").  Id.  The GSA also instructed offerors to submit a paper copy of the completed Scoring Worksheet.  Id.  In the Scoring Worksheet, offerors were required to claim points for meeting specific criteria in the solicitation.  See id. at 116.  For every claimed point, an offeror was required to include supporting documentation in the proposal showing that it met the relevant criteria.  Id.

Of particular import in RXJV's protest, a joint-venture offeror was entitled to claim 5500 points if the joint venture, or each member thereof, had an acceptable cost accounting system ("CAS").  Id. at 135, 180.  The GSA explained that substantiating those points required the offeror to show that the joint venture itself, or each of its members, had a certified CAS; otherwise stated, the offeror needed to

> provide verification from the Defense Contract Audit Agency [("DCAA")],
> Defense Contract Management Agency [("DCMA")], or any Cognizant Federal
> Agency [("CFA")] of an acceptable accounting system that has been audited and
> determined adequate for determining costs applicable to the contract or order in
> accordance with [Federal Acquisition Regulation ("FAR")] 16.301-3(a)(3).

Id.  To satisfy the verification requirement, the GSA mandated that the offeror (1) aver that its accounting system had no material changes since the last audit; (2) list its Data Universal Numbering System code and Commercial and Government Entity code; (3) submit contact information for the entity's representative at the DCAA, DCMA, or CFA; and (4) provide a Standard Form 1408 or a letter from the auditing agency attesting that the entity's accounting system had been audited and determined adequate.  Id.  In lieu of submitting the Standard Form 1408 or agency letter, an offeror could rely on the GSA to contact the appropriate agency for

---

[1]  An offeror, however, could submit certain information concerning subcontractors on one or more separate DVDs.  AR 109.

verification that the offeror's accounting system had been audited and determined adequate.  Id.
An offeror who chose this latter option was not entitled to the 5500 points if the GSA, after
making a reasonable effort, was unable to obtain verification that the offeror's CAS had been
audited and determined adequate.  Id.

## 2.  Evaluation Process

The GSA explained in the solicitation that the awardees would be selected based on
which offerors presented the highest technically rated proposals with a fair and reasonable price.
Id. at 146.  For evaluating proposals, the GSA set forth a step-by-step review process for each
proposal.  This process consisted of the following steps, which the CO was required to perform
in the order noted below:

- Step One:  The CO preliminarily identifies the top eighty proposals by sorting
  all of the submissions from the highest score to the lowest score based on the
  offerors' Scoring Worksheets.  Id.  The CO then reviews the top eighty
  proposals in accordance with the following steps.

- Step Two:  For each proposal, the CO verifies that a support document exists
  for all of the evaluation elements included on the Scoring Worksheet.  Id. at
  146-47.  Any discrepancies at this stage are treated as clarifications.  Id. at
  147.

- Step Three:  The CO conducts an acceptability review to determine whether
  each offeror submitted all of the requested information for the general volume
  in the specified manner.  Id.  If a proposal does not pass the review, the
  proposal is replaced by the next highest scoring proposal that passes the
  acceptability review.  Id.

- Step Four:  The CO determines whether a support document substantiates
  every claimed point on the Scoring Worksheet.  Id.  If the claimed points are
  not substantiated, then (1) those points are deducted, (2) the proposals are
  resorted based on the revised score, and (3) the proposal is replaced if its new
  score is below the cutoff for the top eighty proposals.  Id.

- Step Five:  The CO evaluates whether the offeror proposed fair and reasonable
  pricing.  Id.  An offeror who fails to provide such pricing is eliminated from
  the competition.  Id.

The GSA explained that the process would continue until the top eighty proposals (or more, in
the case of a tie for the last spot) were identified, at which point evaluations cease and contracts
were to be awarded to the offerors of those proposals.  Id.  Offerors were also informed that the
GSA did not intend to hold discussions but would conduct clarifications as necessary.  Id. at 146.
As explained in the Source Selection Decision Memorandum, the GSA adhered to above process
for evaluating proposals and did not hold discussions.  Id. at 466-68.

## B. Proposals

In response to the solicitation, the GSA received 493 proposals.  Id. at 480-88.  RXJV and TISTA both submitted materials in response to the solicitation.  See generally id. at 489-3078 (RXJV); id. at 4901-38 (TISTA).

### 1. RXJV's Proposal

RXJV's proposal was the product of a joint venture between X Technologies, Inc. ("X Technologies") and Rothe Development, Inc. ("Rothe").  See id. at 526-27.  At the time RXJV submitted its proposal, the joint venture was providing information technology services under the predecessor contract.  See id.  Intending to continue such work, RXJV submitted its proposal by the deadline.  Id. at 3579.

In its proposal, RXJV claimed points for having a certified CAS.  Id. at 521.  RXJV provided a table of contents for its CAS materials in which the joint venture noted the presence of Rothe's CAS documents, but RXJV did not mention any such documentation for X Technologies.  Id. at 2950.  Consistent with the table of contents, RXJV's proposal included documentation verifying Rothe's CAS certification as well as a statement averring that Rothe's accounting system was not materially changed since its last audit.  Id. at 2951.  But RXJV neither provided documents verifying X Technologies' CAS certification nor included a statement averring that X Technologies' accounting system remained materially the same since its last audit ("missing documents").  See id. at 2950 (table of contents); see also id. at 3206 (noting the lack of documentation).

The CO reviewed RXJV's proposal in accordance with the procedures noted above.  See id. at 3091-107 (documenting RXJV's evaluation).  The CO reached the fourth step of the evaluation process:  verifying that the support documents substantiated every claimed point on the Scoring Worksheet.  See id. at 3100-07 (validating claimed points); see also id. at 147 (describing the evaluation process).  At this stage, the CO deducted 5500 points from RXJV's proposal because the joint venture only provided evidence that one joint-venture member—Rothe—had a certified CAS and those points were available only if certification evidence was provided for each member.[2]  Id. at 3085.  The CO neither sought clarification from RXJV regarding the missing documents nor explained in predecision materials why such information was not sought.  See id. at 3085-107 (evaluation documents).  Additionally, the CO did not review the documents supporting RXJV's claimed points in the relevant experience section because the "significant points lost in [the section dealing with CAS the record recertification] made the review academic."  Id. at 3085.  When the CO stopped his review, RXJV's validated score was 62,900, id. at 3080, which was 5100 points below the cutoff, id. at 471.

---

[2]  The CO also deducted points for other issues in the proposal, AR 3085-86, but those deductions are not disputed by RXJV.

On February 14, 2018, the GSA posted an award notice reflecting that the agency selected eighty-one awardees.[3]  Id. at 480-88.  RXJV was not listed as an awardee.  Id.  RXJV promptly requested a debriefing.  Id. at 3204.  In a March 9, 2018 debriefing letter, the CO explained why he deducted points and how those deductions placed RXJV below the award cutoff.  Id. at 3204-07.

On March 16, 2018, RXJV sent a letter to the CO requesting correction (and reevaluation) of its proposal and stating that it was protesting to the agency any denial of that request.  Id. at 3547.  RXJV argued that its failure to include documentation showing that X Technologies had a certified CAS was a mistake or clerical error requiring the CO to contact RXJV regarding the missing information.  Id. at 3549-50.  With the letter, RXJV included X Technologies' preproposal-CAS audit showing that X Technologies had a certified CAS.  Id. at 3552-58.  On May 7, 2018, the CO denied RXJV's protest and request for correction.  Id. at 3578.

## 2. TISTA's Submission

On October 6, 2016, the GSA received a package from TISTA.  Id. at 4945.  The package, according to the GSA, only contained TISTA's Scoring Worksheet and two DVDs containing subcontractor information.  Id. at 4901-38 (TISTA's submission); id. at 4939-40 (photo of package contents).  The package, according to the GSA, did not contain a DVD containing TISTA's proposal.  See generally id. at 4901-38.  As a result, the CO wrote in the Source Selection Decision Memorandum that TISTA was removed from the competition due to acceptability issues.  Id. at 471.

After not being listed on the award notice, TISTA timely requested a debriefing.  Id. at 4943.  In a March 9, 2018 debriefing letter, the CO stated that TISTA only submitted a Scoring Worksheet and the subcontractor information.  Id. at 4945.  After noting that TISTA's submission did not include a DVD containing the company's proposal, the CO explained that it was his "understanding that [the missing documents] could only be remedied through discussions . . . as opposed to a clarification . . . ."  Id. at 4945.  Because of that conclusion and his belief that TISTA intended to submit a proposal, the CO stated that he did not immediately notify TISTA that it was being removed from consideration "in the event that that the proposal was later identified to be in the Government's possession or if the decision was later made to hold discussions prior to contract award."  Id.  This decision, he explained, helped TISTA by preserving its eligibility for award for as long as possible.  Ultimately, however, the CO concluded that TISTA was not eligible for an award because the company's proposal was not located and discussions were not held.  Id.; see also id. at 4945-46 (noting that the GSA was unable to evaluate TISTA's submission because it was not sufficiently complete).

Five days after the debriefing, TISTA filed a protest with the Government Accountability Office ("GAO").  Id. at 3587.  As part of its protest, TISTA submitted affidavits from four of its

---

[3]  The agency exceeded its stated target of eighty awardees as a result of a four-way tie for the seventy-eighth position.  AR 3210.

executives in which each executive averred that he saw the DVD containing the proposal put into the package sent to the GSA.[4]  Id. at 3598-3603.  In one of those affidavits, the Vice President of Program Integrity ("Vice President") stated that he personally compiled the package, saw the DVD go into the package, sealed the package, and mailed the package [. . .].  Id. at 3601.  The Vice President further averred that, after receiving notice of the missing DVD, (1) TISTA employees exhaustively searched the company's premises but did not find the DVD and (2) he was told by a [. . .] employee that nobody at the [. . .] had found the DVD.  Id. at 3602.  Finally, the Vice President provided digital copies of the documents that were purportedly on the DVD.  Id. at 3603.  With regard to those files, the parties have stipulated that "the relevant metadata indicate[s] that the documents were created and/or modified no later than October 5, 2016."  Stipulation, ECF No. 48 at 1-2.

In the pertinent part of his response to TISTA's protest, the CO explained how TISTA's package was handled once it arrived at the GSA.[5]  AR 4893-94.  First, the CO averred that the GSA stored the package in a locked space.  Id. at 4893.  The CO then stated that (1) he first handled the package to remove and review the Scoring Worksheet before returning document to the package and (2) he discovered that the DVD was not in the package while handling the package for the second time.  Id.  The CO further noted that he inspected the packing material and ascertained that the DVD was not stuck to the material.  Id.  The CO provided photos of the package and its contents that were taken after the packing material was discarded.  Id. at 4893-94.

The GAO dismissed the protest on May 22, 2018, because protests concerning the same procurement were pending before this court.  Id. at 4972.

## C.  Procedural History

RXJV filed its bid protest with the court on May 14, 2018, and TISTA followed suit shortly thereafter on May 29, 2018.  In their complaints, both parties request (1) a declaration

---

[4]  Although these documents were not before the CO at the time of his decision, the court nonetheless considers the affidavits because they are necessary for effective judicial review.  See Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2000) ("[S]upplementation of the record should be limited to cases in which the 'omission of extra-record evidence precludes effective judicial review" (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000))); see also Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 343 (1997) (explaining that documents submitted to the GAO may be postdecision documents that are not part of the record for review).  Indeed, a meaningful review of TISTA's argument that it submitted a DVD that was lost by the GSA would be difficult, if not impossible, without the affidavits.  The court's conclusion is bolstered by the fact that the parties have not opposed the inclusion of the affidavits in the administrative record.

[5]  As with TISTA's affidavits, the court will consider the CO's explanation of how the package was handled because the exclusion of that information would frustrate judicial review of TISTA's claim that the GSA lost the DVD or maintained inadequate safeguarding procedures.  See Axiom Res. Mgmt., 564 F.3d at 1380; see also supra note 4.

that the CO's failure to seek clarification was unlawful; (2) an injunction setting aside the award list, directing the CO to seek clarification, and ordering that it be selected as an awardee; and (3) an award of costs and attorney's fees.  Given the similarities between the two complaints, the court consolidated the two protests.  Pursuant to the schedule they proposed, the parties briefed cross-motions for judgment on the administrative record.  Oral argument was not requested, and the court deems it unnecessary.  The motions are now ripe for adjudication.

## II.  LEGAL STANDARDS

In ruling on motions for judgment on the administrative record pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).  Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the administrative record."  Bannum, 404 F.3d at 1356.

### A.  Standard of Review

The court reviews challenged agency actions pursuant to the standards set forth in the Administrative Procedure Act.  28 U.S.C. § 1491(b)(4) (2012).  Specifically, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Under this standard, the court

> may set aside a procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  A court reviews a challenge brought on the first ground "to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis."  "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations."

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citations omitted) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)); accord Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) ("The arbitrary and capricious standard . . . requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.").

Procurement officials "are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process."  Impresa, 238 F.3d at 1332 (quoting Latecoere Int'l, Inc. v. U.S. Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)).  Thus, the court's review of a procuring agency's decision is "highly deferential."  Advanced Data Concepts, 216

F.3d at 1058; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) ("The court is not empowered to substitute its judgment for that of the agency."). Furthermore, a "protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater [in negotiated procurements] than in other types of bid protests." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). And, when a contract is to be awarded on a "best value" basis, procurement officials have "even greater discretion than if the contract were to have been awarded on the basis of cost alone." Id. (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.")).

In addition to showing "a significant error in the procurement process," a protestor must show "that the error prejudiced it." Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996); see also Bannum, 404 F.3d at 1351 (holding that if the procuring agency's decision lacked a rational basis or was made in violation of the applicable statutes, regulations, or procedures, the court must then "determine, as a factual matter, if the bid protester was prejudiced by that conduct"). In a postaward bid protest, "a protester must show that there was a 'substantial chance' it would have received the contract award absent the alleged error." Banknote, 365 F.3d at 1350 (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)); see also Data Gen., 78 F.3d at 1562 ("[T]o establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract."). This test for establishing prejudice "is more lenient than showing actual causation, that is, showing that but for the errors [the protestor] would have won the contract." Bannum, 404 F.3d at 1358.

## B. Clarifications

The FAR provides the framework for evaluating RXJV's and TISTA's argument that their protests should be sustained on the grounds that the CO did not seek clarification regarding the documents missing from plaintiffs' respective submissions. "Clarifications are limited exchanges[] between the Government and offerors, that may occur when award without discussions is contemplated." FAR 15.306(a)(1). Indeed, "offerors may be given the opportunity to clarify certain aspects of proposals (e.g., the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor or clerical errors." FAR 15.306(a)(2) (emphasis added). Flowing from the permissive wording of the regulation, the CO's decision to seek (or not to seek) clarification from an offeror is within the CO's discretion.[6] Id.; see BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 509 (2013) ("[T]he

---

[6] There is an analogous regulation in the sealed bidding context that requires the CO to contact the bidder to seek verification of the bid when (1) the bid has an apparent mistake or (2) "the contracting officer has reason to believe that a mistake may have been made." FAR 14.407-1. An apparent clerical mistake may be changed after the CO receives confirmation from the bidder of the intended bid, FAR 14.407-2(a), but other mistakes can only be corrected when the bidder presents "clear and convincing evidence establish[ing] both the existence of the mistake and the bid actually intended," FAR 14.407-3(a).

regulatory provisions regarding mistakes discovered before award in bids for negotiated procurements are largely discretionary."). But see Camden Shipping Corp. v. United States, 89 Fed. Cl. 433, 438 (2009) ("[T]he agency is required to seek clarification only in the case of a clerical error.").

## III. ANALYSIS

Both RXJV and TISTA argue that the CO committed prejudicial error by not seeking clarification and that they therefore are entitled to permanent injunctive relief. The court turns first to RXJV's protest.

## A. RXJV

RXJV focuses its protest on whether the CO abused his discretion by not seeking clarification. The permissive nature of clarifications does not insulate from judicial review a CO's decision to not seek clarification. BCPeabody, 112 Fed. Cl. at 512 ("[The court] cannot accept the implication that there are never situations in which a contracting officer's discretion would be abused by a failure to seek clarification."). A critical component of evaluating a CO's decision to not seek clarification is whether the CO should have discerned that the protestor made an error rather than a deliberate decision. See Dell Fed. Sys. v. United States, 133 Fed. Cl. 92, 106 (2017) (deeming relevant the fact that the government "had notice that a clerical error had likely occurred"), appealed docketed, No. 17-2554 (Fed. Cir. Sept. 15, 2017); Level 3 Commc'ns, LLC v. United States, 129 Fed. Cl. 487, 505 (2016) (giving weight to the fact that the offeror made representations in the proposal concerning the substance of the missing information); BCPeabody, 112 Fed. Cl. at 512 (considering that the offeror submitted a duplicate page and that the CO knew the substance of the missing information); Griffy's Landscape Maint. LLC v. United States, 46 Fed. Cl. 257, 259-60 (2000) (requiring clarification when the missing information "clearly indicate[d] a clerical mistake"). Indeed, RXJV has not provided (and the court is not aware of) any precedent in which this court held that a CO abused his discretion by not seeking clarification when the error was not apparent. Therefore, the obviousness of the error is an important aspect of determining whether the CO acted reasonably.

In light of the above, the CO appropriately exercised his discretion when he did not seek clarification regarding RXJV's ability to satisfy the CAS certification requirement. RXJV fails to show that the CO had any reason to suspect that RXJV inadvertently omitted the missing documents from its proposal. In its proposal, RXJV made no reference to those documents; indeed, RXJV listed only Rothe's CAS materials in the table of contents. These facts are nearly identical to those in Res Rei Development, Inc. v. United States, in which the court held that the CO was not obligated to seek clarification regarding omitted information when the table of contents did not have an entry for that information. 126 Fed. Cl. 535, 552 (2016). The court is not persuaded by RXJV's argument that its mistake was apparent because RXJV documented in the relevant-experience portion of its proposal that X Technologies was currently performing cost-reimbursement contracts, which require a CAS. The CO cannot be charged with knowledge of X Technologies' work because the CO did not evaluate the relevant experience section of the proposal once he concluded that RXJV did not have enough points. Furthermore, the CO was not obligated to hunt through the proposal in search of information that might lead the CO to

believe that seeking clarification was warranted.  Cf. ST Net, Inc. v. United States, 112 Fed. Cl. 99, 110 (2013) ("[A]n agency is not required to sift through a proposal in order to identify information that the offeror failed to include in the correct place.").  Moreover, RXJV would not prevail even if the CO knew of X Technologies' cost-reimbursement work.  The relevant experience indicates, at best, that RXJV could have submitted the necessary materials;[7] the relevant experience noted by RXJV does not reflect that it made a mistake when compiling its proposal, especially in light of the omissions from the table of contents.  Under these facts, the CO reasonably decided to not seek clarification.

In sum, RXJV fails to demonstrate that the CO abused his discretion or that its protest should otherwise be sustained.  Because RXJV does not succeed on the merits of its protest, RXJV is entitled to neither costs nor injunctive relief.  See ARxIUM, Inc. v. United States, 136 Fed. Cl. 188, 198 (2018) ("A lack of success on the merits . . . obviously precludes the possibility of an injunction."); Q Integrated Cos. v. United States, 132 Fed. Cl. 638, 642-43 (2017) ("A protestor thus must prevail on the merits at least in part before the court can grant an award of bid preparation and proposal costs.").

## B.  TISTA

The issues raised in TISTA's protest are similar to those raised by RXJV.  Both protests concern, at least in part, the CO's decision on how to address missing information.  Unlike the limited omission in RXJV's protest, however, TISTA's protest concerns a large amount of missing information:  TISTA submitted a Scoring Worksheet and some subcontractor information but purportedly did not include a DVD containing its proposal.  Another critical difference is that TISTA disputes the agency's conclusion that the proposal DVD was not submitted.  Reflecting these differences, TISTA argues that its protest should be sustained because (1) the GSA lost the DVD containing its proposal, (2) the GSA failed to safeguard its proposal, and (3) under these circumstances, the GSA should be required to accept the proposal in accordance with the government-control exception set forth in FAR 15.208(b).  TISTA also argues that even if the DVD was not included with its submission to the GSA, the CO erroneously concluded that the omission could not be redressed through a clarification or abused his discretion by declining to hold discussions.

### 1.  Presumption of Regularity

TISTA first argues that overwhelming evidence indicates that that the proposal DVD was delivered to the GSA such that the agency must be held responsible for losing the DVD.

---

[7]  The CO might not even conclude that X Technologies' work on cost-reimbursement contracts suggested that the company possessed the government audit required by the solicitation at issue in this protest.  RXJV avers that a CO would form such a belief because cost-reimbursement contracts require a government audit, but RXJV fails to present authority for that proposition.  RXJV merely cites to FAR 16.301-3(a)(3), which explains that cost-reimbursement contracts require that "[t]he contractor's accounting system is adequate for determining costs applicable to the contract or order . . . ."  That regulation does not explicitly require a government audit.

Defendant responds that TISTA has not rebutted the presumption of regularity that applies to the GSA's processing of proposals. Specifically, defendant asserts that (1) the affidavits from TISTA's executives are insufficient, (2) the CO stated that he is certain the DVD was not in the package containing TISTA's submission, and (3) TISTA provided inconsistent explanations regarding the contents of the package.

Although not explicitly stated, TISTA's argument that the GSA lost its proposal is properly construed as an assertion that the presumption of regularity has been rebutted. "The 'presumption of regularity' supports official acts of public officers . . . . [T]he doctrine presumes that public officers have properly discharged their official duties" unless the protestor shows otherwise. Bernklau v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001); accord Am-Pro Protective Agency v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002); see also United States v. Roses Inc., 706 F.2d 1563, 1567 (Fed. Cir. 1983) (noting that the presumption is "that what appears regular is regular, the burden being upon the attacker to show the contrary"). The presumption can only be rebutted by clear and convincing evidence. See Schism v. United States, 316 F.3d 1259, 1302 (Fed. Cir. 2002) (en banc); see also Impresa, 238 F.3d at 1338 (explaining that the presumption of regularity is rebutted by "evidence suggesting that the agency decision is arbitrary and capricious").

The presumption of regularity must be considered in light of how the agency described its process. Roses, 706 F.2d at 1567 ("If it appears irregular, it is irregular, and the burden shifts to the proponent to show the contrary."). Here, as described above, the CO stored the package in a locked space, opened the package to review the Scoring Worksheet, and documented the contents of the package after discovering the proposal DVD was not included. AR 4893. The CO's actions appear in accord with how the GSA described the processing of proposals in general. Id. Given these circumstances, the burden is on TISTA to show an irregularity by clear and convincing evidence. See Roses, 706 F.2d at 1567.

TISTA does not carry its burden. First, TISTA attempts to twist into something more nefarious the CO's statement in the debriefing letter that he did not notify the company that it was being removed from competition because TISTA's proposal DVD might be found to be in the GSA's possession. Rather than suggesting that he believed that the GSA lost the DVD, the CO was merely acknowledging the possibility that the DVD could be found in the GSA's possession. He did not suggest such an event was likely or provide a reason to believe the GSA may have lost the DVD. Indeed, there is no reason to read much into such a hypothetical situation, especially when the CO justified his decision to wait for another reason: he thought it was helpful given that TISTA's intent to submit a proposal could be realized if discussions were held. Moreover, if the CO believed (or even suspected) that the GSA lost the DVD, the court would expect that such a belief would be documented during the evaluation process. But there is no such evidence in the administrative record; TISTA only points to the CO's statement, which was written after the award decision. Under these circumstances, the CO's statement does not suggest an irregular process.

Next, TISTA relies on the affidavits from its executives in which they aver that the proposal DVD was sent to the GSA. TISTA's reliance on uncorroborated affidavits is insufficient. See Will H. Hall & Son, Inc. v. United States, 54 Fed. Cl. 436, 442 (2002) (noting a

plausible account set forth in affidavits, which was not contradicted by other record evidence, was insufficient to show clear and convincing evidence of an error because "the credibility of carefully worded affidavits, not subject to cross-examination, must be corroborated by other clear and convincing evidence"); see also All-Am. Poly Corp., GSBCA No. 7104, 84-3 BCA ¶ 17682 ("Uncorroborated affidavit evidence, which by its nature is not subject to cross-examination, does not rise to the level of clear and convincing evidence."). The affidavits are not corroborated by the CO's statement because, as explained above, the CO did not indicate that the GSA lost the DVD. The only other evidence that TISTA suggests corroborates the affidavits is the tracking manifest from [. . .]. But the manifest does not indicate that the DVD was in the package; instead, the manifest merely reflects the undisputed fact that TISTA sent a package to the GSA.[8] In sum, TISTA fails to rebut the presumption of regularity by clear and convincing evidence.

## 2. Safeguarding Procedures

TISTA also argues that it is entitled to relief because the DVD containing its proposal is missing due to the GSA lacking adequate procedures for safeguarding the proposals. Relying on GAO precedent, TISTA contends that a protestor prevails when the record (1) reflects a failure to maintain or adequately explain the safety procedures, (2) contains acceptable evidence that the agency timely received the proposal, and (3) shows that the loss of the proposal information was more than a mere isolated incident of negligence.[9] On the first prong, TISTA asserts that the GSA provided no explanation of its safety procedures in the debriefing and that the CO's explanation to the GAO was also insufficient. As to the second prong, TISTA notes the undisputed fact that the GSA timely received its package. With regard to the third prong, TISTA contends that the loss of the DVD is more than an isolated incident of negligence because the CO opened the proposal box, discarded packing materials, left the package on a shelf, and returned later to inventory the contents of the box. Defendant does not provide a direct response to TISTA's invocation of the GAO test.

TISTA's argument is unconvincing. The first stumbling block is that TISTA's argument is premised on a GAO test rather than binding precedent. See Cutright v. United States, 953 F.2d 619, 622 n.* (Fed. Cir. 1992) ("This court does not consider Comptroller General decisions binding on the Claims Court."). Although the court could nonetheless adopt the test, TISTA does not explain why doing so would be prudent. Second, even if the court adopted the GAO's

---

[8] TISTA suggests that the recorded weight of the package, as documented on the tracking manifest, may be helpful to determining whether the proposal DVD was included. This suggestion is fanciful in light of the negligible weight of a DVD. But even if the recorded weight on the manifest would be different without the proposal DVD, TISTA provides no evidence suggesting that the stated weight on the manifest reflects that the DVD was included in the package.

[9] TISTA also references Federal Acquisition Services Team, LLC v. United States, a decision issued by another judge of this court in which the court noted that incomplete information frustrated the GAO's application of the test. 124 Fed. Cl. 690, 707 (2016). In that decision, however, the court did not endorse or adopt the GAO's test. See id.

test, TISTA still would not prevail.  The GAO's test provides an exception to its rule that the government's loss of proposal information does not entitle the offeror to relief.  Project Res., Inc., B-297968, 2006 CPD ¶ 58 (Comp. Gen. Mar. 31, 2006).  To prevail, the protestor must show that (1) the government failed to explain what safeguarding procedures were in place, (2) the evidence suggests that the proposal was received by the government, and (3) the government's negligent loss of information was not an isolated incident.  See Def. Logistics Agency-Reconsideration, B-239565, 191-1 CPD ¶ 298 (Comp. Gen. Mar. 19, 1991); see also Fed. Acquisition Servs. Team, LLC, B-410466, 2015 CPD ¶ 20 (Comp. Gen. Dec. 31, 2014) (explaining the exception by focusing on whether the negligent loss was an isolated incident).  TISTA fails to meet both the first and third prongs of the test.  As to the first prong, the CO explained how the GSA safeguarded proposals:  "They were logged, assigned a number, and stored in [a] locked space.  They were only required to be handled in two instances 1) to remove the hardcopy [Scoring Worksheet] for self-score recording and 2) to upload . . . the proposal to the government systems."  AR 4893; see also id. (describing the processing of TISTA's proposal).  Given the CO's response, the court cannot discern (and TISTA does not identify) any additional information that would be necessary to provide an adequate explanation of the GSA's policies for safeguarding proposals.  With regard to the third prong, TISTA presents no evidence of a "systemic failure resulting in multiple or repetitive instances of lost information."  Project Res., Inc., B-297968, 2006 CPD ¶ 58; see also id. (denying the protest because "[t]here is no evidence that the agency, for example, lost the proposal information by other offerors in this procurement").  TISTA has only shown that its proposal DVD was missing; TISTA has not demonstrated that the GSA lost multiple items during the proposal evaluation process.[10]  See AR 4895 ("The absence of TISTA's proposal is unique in this procurement . . . .").  Simply stated, TISTA has not demonstrated that the GSA failed to safeguard the proposals.

### 3. Government Control

TISTA further argues that the government-control exception, set forth at FAR 15.208(b), requires sustaining TISTA's protest because there is acceptable evidence that the proposal was received by the GSA and was under the GSA's control prior to the time set for receipt of proposals.  The government-control exception is an exception to the general rule that proposals must be submitted by the deadline stated in the solicitation.  Elec. On-Ramp, Inc. v. United States, 104 Fed. Cl. 151, 160 (2012).  The exception applies if:

(1) A proposal "is received before award is made,"

(2) "the contracting officer determines that accepting the late proposal would not unduly delay the acquisition,"

(3) the proposal "was received at the Government installation designated for receipt of proposals," and

---

[10]  TISTA grasps at straws by pointing to RXJV's missing documents as evidence that the GSA may have lost information from multiple proposals.  RXJV has not claimed that it submitted those documents; to the contrary, RXJV argues that the CO erred by not asking the RXJV to supply the missing documents.

(4) the proposal "was under the Government's control prior to the time set for receipt of proposals."

FAR 15.208(b)(1).

Relying on that exception, TISTA first contends that the preponderance of the evidence reflects that the GSA received TISTA's proposal prior to the deadline. To support that contention, TISTA relies on its executives' affidavits as well as a [. . .] tracking record, the GSA's acknowledgement that TISTA's package was received, the package showing no signs of tampering, and the CO's statement that he discarded packing materials after opening the package. Second, TISTA asserts that the purpose of the government-control requirement is to prevent modification of proposals after submission and that this objective is satisfied by the stipulated fact that, during the GAO protest, TISTA submitted a complete proposal with metadata reflecting that no changes were made after the deadline for submitting a proposal. Defendant does not provide a direct response to TISTA's invocation of the government-control exception.

TISTA's argument is not persuasive. The record reflects that, at the time of the award, the GSA possessed an incomplete submission from TISTA consisting of the Scoring Worksheet and some subcontractor information. Indeed, the essential components of the proposal were not provided until the GAO protest. Thus, the government-control exception is not applicable to TISTA's protest because TISTA fails to demonstrate that its proposal was received before an award was made. See supra Section III.B.1.

### 4. Clarifications

TISTA further argues that, even if the DVD was not included with its submission to the GSA, the CO abused his discretion by not seeking clarification. Specifically, TISTA contends that the missing information could be redressed through a clarification because (1) the CO had sufficient information to evaluate its submission and (2) a clarification would not have materially altered the terms of its proposal. TISTA next asserts that the CO was obligated to seek clarification because the CO admitted the mistake was apparent, and TISTA has previously performed contracts for the GSA. Defendant responds that TISTA's failure to submit the DVD was a material omission that is not the proper subject of a clarification.

The court begins with the threshold question that the parties suggest: whether the CO could have (not should have) sought clarification regarding TISTA's missing proposal. The answer is informed by the simple proposition set forth in Dell Federal Systems: clarifications cannot cure material omissions, materially alter the technical elements, or materially change the cost components of a proposal. 133 Fed. Cl. at 105; see also Level 3, 129 Fed. Cl. at 504 ("'[C]larifications' are . . . information exchanges that do not alter the terms of the offer . . . ."); BCPeabody, 112 Fed. Cl. at 510 (suggesting that clarifications are appropriate to address the capabilities of the offeror but not the terms of the offer). Otherwise stated, the focus is on what would be changed by the clarification. The absence of a proposal is a textbook case of a material omission; it is difficult to fathom how anything could be more material. Cf. Furniture by

Thurston v. United States, 103 Fed. Cl. 505, 518 (2012) ("A solicitation term is 'material' if failure to comply with it would have a non-negligible effect on the price, quantity, quality, or delivery of the supply or service being procured.").  Contrary to TISTA's contention, the missing information precluded the CO from conducting all but the first evaluation step; after initially ranking the proposals based on the Scoring Worksheet, the CO was required to review the contents of the proposals at every subsequent step of the evaluation process.  See AR 147 (describing evaluation procedures).  The conclusion that the missing information was material (and thus not subject to clarification) is bolstered by the fact that permitting TISTA to remedy its error would require the submission of missing pricing information, which was an essential part of the proposal.  See id. (requiring that awardees have "fair and reasonable pricing"); see also ST Net, 112 Fed. Cl. at 109-10 (concluding that the CO reasonably concluded that missing pricing information could not be remedied through a clarification); AR 153 (explaining that "Cost/Price proposals may only be modified as a result of discussions").

Rather than focusing on how a clarification would change what information is before the CO, TISTA argues that its submission of the information on its proposed DVD would not be a substantive revision because the company can show that it prepared the files prior to the proposal deadline.  Specifically, TISTA asserts that the missing information could be provided through a clarification because the parties agree that TISTA, during proceedings before the GAO, produced the relevant files with metadata indicating that no changes were made after the proposal deadline.  But TISTA does not account for how the information it provided during its GAO protest would change what the CO was required to evaluate to determine materiality; TISTA does not compare what the CO possessed at the proposal deadline with what the CO would have possessed following a clarification.  Further, TISTA's argument is not in accord with the limited nature of clarifications; under TISTA's theory, even the most fundamental aspects of a proposal would always be subject to clarification so long as the offeror showed what it intended to submit.  This is plainly not contemplated by the FAR.  See FAR 15.306(a)(1) (noting that clarifications are "limited exchanges"); see also Dell Fed. Sys., 133 Fed. Cl. at 105 (explaining that more substantive changes require discussions).  In sum, TISTA does not demonstrate that its purported failure to submit the DVD could be remedied through a clarification because such a failure constitutes a material omission.

## 5. Discussions

Finally, TISTA argues in the alternative that the CO's decision to not hold discussions was arbitrary, capricious, and an abuse of discretion.  Defendant responds that the CO had no obligation to conduct discussions because (1) offerors were on notice that awards may be made without discussions and (2) the GSA explained in the solicitation that the omission of information from a proposal might result in the proposal being rejected.

Given that the GSA unequivocally reserved the right not to conduct discussions, the court defers to the CO's decision to not hold discussions if that decision was reasonable.  See CliniComp Int'l, Inc. v. United States, 117 Fed. Cl. 722, 744 (2014) (noting that the decision on whether to conduct discussions is left to the CO's discretion, especially when offerors are on notice that awards may be made without discussions); see also JWK Int'l Corp. v. United States, 279 F.3d 985, 988 (Fed. Cir. 2002) ("[A]bsent bad faith or an abuse of discretion, the contracting

officer need not conduct discussions."). The CO, when deciding whether to hold discussions, was presented with a simple choice: disregard TISTA's incomplete submission or expend significant resources conducting discussions with at least eighty offerors.[11] See FAR 15.306(d)(1) (explaining that discussions, if they are held, must be conducted with every offeror within the competitive range). Given the costs associated with engaging a large number of offerors in discussions and the small potential benefit of adding one more proposal to the evaluation pool, the CO reasonably decided not to hold discussions. The court's conclusion is bolstered by the fact that the CO did not indicate that the existing proposal pool was weak. See DynCorp Int'l, LLC v. United States, 76 Fed. Cl. 528, 540 (2007) (deferring to the CO's decision to not hold discussions based on the strength of the proposals).

TISTA unpersuasively argues for a different result by relying on information that was not before the CO. Specifically, TISTA contends that the CO's decision not to conduct discussions was arbitrary, capricious, or an abuse of discretion because the facts show that TISTA (1) took care to provide a complete proposal and (2) was excluded on a technicality despite having significant experience and a strong performance record. TISTA presents no evidence that such information was before the CO. Indeed, the purported facts TISTA relies on are derived from postdecision affidavits and performance data that was on the proposal DVD that the GSA did not possess. TISTA does not explain, and the court cannot discern, a justification for reviewing the CO's decision based on evidence that the CO did not have at the time of the decision. See Camp v. Pitts, 411 U.S. 138, 142 (1973) (noting that the agency's decision must be justifiable on the record before the agency at the time of its decision). In light of the above, the CO's decision to not hold discussions was an appropriate exercise of his discretion.

### 6. Summary

In sum, TISTA fails to demonstrate that the CO erred or that the company's protest should otherwise be sustained. Because TISTA does not succeed on the merits of its protest, TISTA is entitled to neither costs nor injunctive relief. See ARxIUM, 136 Fed. Cl. at 198; Q Integrated, 132 Fed. Cl. at 642-43.

### IV. CONCLUSION

For the reasons discussed above, the court **DENIES** RXJV's and TISTA's motions for judgment on the administrative record and **GRANTS** defendant's cross-motions for judgment on the administrative record. Both RXJV's and TISTA's protests are **DISMISSED.** No costs. The clerk shall enter judgment accordingly.

The court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which all the parties. Then, by **no later than Friday, September 21, 2018,** the parties shall file a joint status report indicating their agreement with the proposed

---

[11] The precise number of offerors who would be eligible for discussions is not known because the CO did not establish a competitive range. AR 480. However, given that the GSA received 493 proposals, id. at 4892, it may have needed to conduct discussions with hundreds of offerors.

redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

**IT IS SO ORDERED.**

<u>s/ Margaret M. Sweeney</u>
MARGARET M. SWEENEY
Chief Judge